IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IBRAHIM NASR IBRAHIM, | : Civil No. 1:25-CV-00727 |
| Petitioner, | : |
| v. | : |
| SUPERINTENDENT OF MIAMI CORRECTIONAL FACILITY,[1] *et al.*, | : |
| Respondents. | : Judge Jennifer P. Wilson |

## **MEMORANDUM**

This is a habeas corpus case under 28 U.S.C. § 2241 brought by an immigration detainee who asserts that his continued detention without a bond hearing violates his constitutional right to due process. For the reasons that follow, the petition will be granted, and the government will be ordered to conduct a bond hearing.

---

[1] The superintendent of Miami Correctional Facility is automatically substituted as the lead respondent in this case because petitioner has been transferred to Miami Correctional Facility. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (holding that "the proper respondent" in a habeas corpus case "is the warden of the facility where the prisoner is being held."); *see also Ball v. McGinley*, No. 3:12-CV-894, 2018 WL 3426236, at *1 n.1 (M.D. Pa. July 16, 2018) (substituting proper respondent in a habeas corpus case pursuant to Federal Rule of Civil Procedure 25(d)). Although Miami Correctional Facility is in the Northern District of Indiana, *see* 28 U.S. § 94(a)(2), this court retains jurisdiction over this case because petitioner was detained in this district at the time he filed his petition. *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 446 (3d Cir. 2021).

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner, Ibrahim Nasr Ibrahim, is a native and citizen of Iraq who fled that country after serving as a translator for American troops stationed in the country. He subsequently entered the United States as a refugee after living in Egypt for several years. (Doc. 9-2, pp. 2–4.)[2] Ibrahim's status was adjusted to lawful permanent resident on November 9, 2011. (*Id.* at 2.) On December 9, 2014, Ibrahim was convicted of impersonation to deceive a law enforcement officer in Minnesota state court and sentenced to 45 days of imprisonment. (*Id.*) On April 3, 2017, he was convicted of misprision of felony in Minnesota state court and sentenced to 170 days of imprisonment. (*Id.*) On October 31, 2022, he was convicted of conspiracy to distribute a controlled substance in the United States District Court for the District of South Dakota and sentenced to 60 months of imprisonment. (*Id.* at 3.)

United States Immigration and Customs Enforcement ("ICE") initiated proceedings to remove Ibrahim from the United States on August 16, 2023, through issuance of a notice to appear ("NTA"). (*Id.*) On October 11, 2023, an immigration judge ("IJ") sustained the charges of removability against Ibrahim. (*Id.*) Ibrahim sought relief from removal to Iraq. (*Id.*) At a hearing on Ibrahim's

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

motion, the IJ asked Ibrahim whether he would accept removal to Egypt rather than Iraq. (*Id.* at 4.) Ibrahim stated that he would, and the government stated that it did not object to removing him to Egypt. (*Id.*) The IJ accordingly ordered him removed to Egypt and did not list an alternative country in the event that Egypt did not accept Ibrahim. (*Id.*)

On March 7, 2024, Ibrahim filed an administrative appeal to the Board of Immigration Appeals ("BIA"). (*Id.*) The BIA dismissed his appeal, concluding that Ibrahim had waived his appeal rights before the IJ. (*Id.*) On May 20, 2024, Egypt advised the government that it would not accept Ibrahim due to his lack of Egyptian documents, ties, and citizenship. (*Id.*) Ibrahim filed a motion to reopen his appeal to the BIA, a motion to stay his removal, and a petition for review by the United States Court of Appeals for the Third Circuit. (*Id.*) The Third Circuit temporarily stayed Ibrahim's removal. (*Id.*) On July 11, 2024, the BIA denied Ibrahim's motion to reopen and motion to stay his removal. (*Id.*)

On July 25, 2024, the Department of Homeland Security ("DHS") filed a motion to reopen Ibrahim's removal proceedings with the BIA, noting that the IJ's decision had addressed removal to Egypt but had not addressed the possibility of removal to Iraq. (*Id.* at 4–5.) The BIA denied the government's motion to reopen on September 9, 2024. (*Id.* at 5.) On November 6, 2024, the Third Circuit vacated the temporary stay of Ibrahim's removal and denied his request for a stay of

removal. (*Id.*) Ibrahim was then released from BOP custody, transferred to ICE custody, and housed at the Clinton County Correctional Facility on December 27, 2024. (*Id.*) On December 30, 2024, the government again sought to reopen Ibrahim's immigration proceedings so that additional findings on his potential removal to Iraq could be made. (*Id.*) The IJ denied the motion to reopen on April 3, 2025. (*Id.*)

Based on the denial of the motion to reopen, the government concluded that Ibrahim could lawfully be removed to Iraq on April 3, 2025. (*Id.* at 6.) The government requested travel documents to effectuate the removal to Iraq on April 9, 2025. (*Id.*) The government then conducted a post final-order custody review on the same day in which it determined that Ibrahim's detention would continue until he was removed to Iraq. (*Id.*)

On April 18, 2025, Ibrahim sought to reopen the removal proceedings so that he could contest his removal to Iraq. (*Id.*) He then filed the instant case on April 25, 2025, as an unrepresented petitioner, requesting that the court stay his removal and order him removed from ICE custody. (Doc. 1.) The case was initially assigned to United States District Judge Keli M. Neary. The IJ denied Ibrahim's motion to reopen his immigration proceedings on May 1, 2025. (Doc. 9-2, p. 6.) Iraq issued travel documents for Ibrahim's removal on the same date, and he was scheduled for removal on May 15, 2025. (*Id.*)

4

On May 6, 2025, Judge Neary dismissed the petition without prejudice for lack of subject matter jurisdiction to the extent it sought a writ of habeas corpus compelling DHS to remove Ibrahim to a country other than Iraq or otherwise challenged his removal order, but otherwise ordered the government to respond to the petition on the issue of whether Ibrahim should remain in detention pending his removal. (Doc. 5.) The government filed its response on May 27, 2025, and Ibrahim filed a reply brief on June 11, 2025. (Doc. 11.) Ibrahim then filed several documents in July and August of 2025, including an amended reply brief, a motion for summary judgment, a motion to expedite review of the petition, a letter to Judge Neary regarding the status of his detention and immigration proceedings, and a "motion to inform." (Docs. 13–18.) In these documents, Ibrahim informed the court that United States Citizenship and Immigration Services ("USCIS") had made an administrative finding that Ibrahim had established a reasonable possibility that he would be tortured if he was removed to Iraq. (*See* Doc. 13-1.)

Based on this fact, the fact that Egypt had refused to accept Ibrahim, and Ibrahim's representation that he had contacted several other countries but that they had also refused to accept him, Judge Neary issued an order on September 24, 2025, finding that Ibrahim had established "good reason to believe that there is a significant likelihood of removal in the reasonably foreseeable future" pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), and accordingly scheduled an

evidentiary hearing for November 6, 2025, to determine whether the government could respond with sufficient evidence to rebut that showing. (Doc. 19.) Counsel entered an appearance for Ibrahim on October 24, 2025. (Doc. 21.) Shortly thereafter, Judge Neary recused herself from the case and it was reassigned to the undersigned on October 27, 2025. (Doc. 22.)

The court conducted the evidentiary hearing as scheduled on November 6, 2025. (Doc. 26.) Based on the evidence produced during the hearing, including evidence that Ibrahim and the government had both moved to reopen his immigration proceedings in light of USCIS's finding that Ibrahim had established a reasonable possibility that he would be tortured if he was removed to Iraq, the court issued an order at the conclusion of the hearing requiring the parties to file supplemental letter briefs. (Doc. 27.) The court directed the parties to address "the possible impact, if any, of the pending motion to reopen immigration proceedings on this case, including: whether this court is precluded from issuing a writ of habeas corpus while that motion is pending; whether this court is permitted to exercise discretion about whether to issue a writ of habeas corpus while that motion is pending; and whether the court should stay its ruling pending the decision of the motion." (*Id.*)

The parties filed letter briefs as directed on November 13, 2025, and November 19, 2025. (Docs. 28–29.) In its brief, the government noted that the IJ

6

had granted the motions to reopen Ibrahim's immigration proceedings via a verbal order. (Doc. 28.) Both parties asserted that the case could be decided based on the original petition and briefing because petitioner was in pre-final removal order status at the time he filed the petition, and the IJ's decision to reopen immigration proceedings had restored that status. (Docs. 28–29.) The government then provided the IJ's written order granting the motion to reopen immigration proceedings on November 20, 2025. (Doc. 30.)

On December 1, 2025, the court issued an order finding that additional supplemental briefing was necessary, noting that resolving the case required the court to consider the totality of the factual circumstances surrounding Ibrahim's detention and that too many of these circumstances had changed since the filing of the original petition to rely on the petition and original briefs. (Doc. 31.) The court noted three factual circumstances that were especially relevant: (1) the reopening of petitioner's removal proceedings; (2) the fact that Ibrahim was transferred from Pike County Correctional Facility to Moshannon Valley Processing Center after the filing of this case; and (3) the fact that the government had determined that Ibrahim has a credible fear of removal to his native country. (*Id.* at 3.) The court accordingly ordered the parties to file supplemental briefs addressing the current factual circumstances. (*Id.* at 3–4.) Ibrahim was ordered to file his supplemental brief no later than December 15, 2022, and respondent's

opposition brief and Ibrahim's reply brief were ordered to comply with the relevant timelines under Local Rules 7.6. and 7.7. (*Id.*)

On December 15, 2025, Ibrahim's counsel requested a one-week extension of time to file his supplemental brief. (Doc. 32.) Counsel noted that since the court's previous order, Ibrahim had been transferred to Miami Correctional Facility in Bunker Hill, Indiana. (*Id.* at 1.) Counsel further noted that she had attempted to speak with him several times since the transfer but had been unable to do so. (*Id.* at 1–2.) The court granted the motion for extension of time on December 19, 2025, requiring Ibrahim's supplemental brief to be filed no later than December 22, 2025. (Doc. 33.) The court did not alter its previous order that the government's opposition brief and any reply brief would need to be filed in accordance with Local Rules 7.6 and 7.7.

Ibrahim filed his supplemental brief through counsel on December 22, 2025. (Doc. 34.) Pursuant to this court's December 1, 2025, order and Local Rule 7.6, the government's supplemental opposition brief was due within fourteen days of that date, or no later than January 5, 2025. That deadline has since passed, and respondents have neither filed a supplemental brief nor requested an extension of time to do so. The petition for writ of habeas corpus is accordingly ripe for judicial review.

## CIRCUMSTANCES OF PETITIONER'S DETENTION[3]

Ibrahim is currently detained in Miami Correctional Facility. (Doc. 34, p.2.) In that facility, he is confined to his cell for 18–22 hours a day. (*Id.* at 3.) He does not have any access to sick call with medical providers and must wait approximately two weeks to see a doctor or nurse after requesting to do so. (*Id.*) He is also not provided any access to mental health care and has been denied the opportunity to communicate with his attorney in a confidential fashion. (*Id.* at 2–3.) Rather than speaking with his attorney confidentially, Ibrahim has been forced to use a messaging app provided to detainees for communication with their family to send messages to his wife regarding the conditions of his confinement, which have subsequently been passed on to his counsel. (*Id.* at 2.)

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

---

[3] Because respondents have not responded to petitioner's supplemental brief regarding the current conditions of his confinement, the court takes these facts from the petitioner's brief. (*See* Doc. 34.)

#### STANDARD OF REVIEW

A United States district court may issue a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

#### DISCUSSION

Although there is no statutory limit on the length of time a detainee may be detained under 8 U.S.C. § 1226(c), *Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018), a petitioner may still bring an as-applied constitutional challenge alleging that his continued detention has become unconstitutional under the Due Process Clause of the Fifth Amendment. *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 208–09 (3d Cir. 2020). When considering whether the petitioner's detention has become unconstitutional, "[t]he most important factor is the duration of detention." *Id.* at 211. The court must additionally consider "all the other circumstances" of the detention, including (1) "whether the detention is likely to continue," (2) "the reasons for the delay, such as a detainee's request for continuances," and (3) "whether the alien's conditions of confinement are 'meaningfully different' from criminal punishment." *Id.* (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)).

Applying the above standard to this case, the court will grant Ibrahim's petition for writ of habeas corpus and order the government to conduct a bond

hearing. First, with respect to the duration of Ibrahim's detention, he has been in ICE custody since December 27, 2024, a period of approximately 13 months. Recent decisions by courts in this district have split as to whether detention for approximately this duration supports the issuance of a writ of habeas corpus. *Compare, e.g.*, *McDougall v. Warden, Pike Cnty. Corr. Facility*, No. 3:23-CV-759, 2023 WL 6161038, at *2 (M.D. Pa. Sept. 21, 2023) (Mariani, J.) (collecting cases and finding that petitioner's detention for approximately 13 months was not unreasonable), *with, e.g.*, *Davydov v. Doll*, No. 1:19-CV-2110, 2020 WL 969618, at *4 (M.D. Pa. Feb. 28, 2020) (Kane, J.) (collecting cases and finding that petitioner's detention for approximately 14 months was unreasonable). Thus, this court finds this factor neutral in its analysis.

Second, with respect to the likelihood of continued detention, Ibrahim argues that the reopening of his immigration proceedings will significantly lengthen his potential detention. (Doc. 34, p. 3.) Ibrahim notes that he may need to obtain counsel to litigate his immigration proceedings, that DHS will need to consider possible withholding or deferral of his removal in light of USCIS's finding of a reasonable possibility of torture in Iraq, and that if removal to Iraq is not allowed, DHS will need to conduct an individualized assessment to determine whether Ibrahim may be removed to any third country. (*Id.* at 3–4.)

11

Ibrahim's contention that the reopening of immigration proceedings is likely to significantly increase the duration of his detention appears to be a reasonable conclusion in light of the record and evidence before this court. Because respondents have not contested this conclusion through a supplemental brief as ordered, the court will adopt the conclusion as its own.

Turning to the third factor under *German Santos*, the reasons for the delay in Ibrahim's underlying immigration proceedings, neither party has presented any supplemental arguments regarding the current procedural posture of the immigration proceedings. Nevertheless, the court finds that this factor weighs in favor of habeas corpus relief. The record of Ibrahim's immigration proceedings does not indicate that he has intentionally delayed the proceedings simply to avoid being removed from the United States: he voiced his consent to removal to Egypt and has actively sought a third country to which he could be removed. Rather than opposing removal generally, Ibrahim has simply sought to avoid removal to his native country of Iraq, a place where the government has concluded he has a reasonable fear of being tortured. The court is sympathetic to Ibrahim's wish to avoid possible persecution or torture in Iraq, especially in consideration of his service as a translator for American service members in that country. Accordingly, the court finds that this factor weighs in favor of habeas relief.

Finally, the court finds that on the current record, Ibrahim's detention is not meaningfully different from criminal punishment.  Ibrahim is currently housed in a state prison in Indiana alongside people who have been convicted of crimes.  (*Id.* at 2.)  Ibrahim attests that he is confined in his cell for at least 18 hours a day, that he has limited access to medical care and no access to mental health care, and that he has no ability to communicate confidentially with his attorney.  (*Id.* at 2–3.)  Ibrahim's counsel argues that these conditions are worse than the conditions he faced while serving his federal criminal sentence in FCI-Allenwood.  (*Id.*)  This conclusion again strikes the court as reasonable, and given respondents' failure to rebut the conclusion through any contrary evidence or argument, the court will adopt it as its own.  Accordingly, the court finds that this factor weighs in favor of granting habeas corpus relief.

Thus, having considered the circumstances of Ibrahim's detention as required by *German Santos*—particularly the likelihood that his detention will continue for a significant amount of time and the conditions of his confinement— the court will grant his petition and order ICE to conduct a bond hearing.

## CONCLUSION

For the foregoing reasons, Ibrahim's petition for writ of habeas corpus (Doc. 1) will be granted. The government will be required to conduct an individualized bond hearing. Ibrahim's pending motion for summary judgment, motion to expedite, and motion to inform will be denied as moot. An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: January 15, 2026