IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IBRAHIM NASR IBRAHIM,                    :        Civil No. 1:25-CV-00727
                                         :
        Petitioner,                      :
                                         :
        v.                               :
                                         :
SUPERINTENDENT OF MIAMI                  :
CORRECTIONAL FACILITY,[1] *et al.*,      :
                                         :
                                         :
        Respondents.                     :        Judge Jennifer P. Wilson

**MEMORANDUM**

This is a habeas corpus case filed by an immigration detainee pursuant to 28 U.S.C. § 2241.  The court previously granted a writ of habeas corpus requiring the government to provide Petitioner an individualized bond hearing.  The case is now before the court on Petitioner's motion to enforce that ruling, wherein he argues that the bond hearing was not sufficiently individualized and requests that this

---

[1] The superintendent of Miami Correctional Facility is automatically substituted as the lead respondent in this case because petitioner has been transferred to Miami Correctional Facility. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (holding that "the proper respondent" in a habeas corpus case "is the warden of the facility where the prisoner is being held."); *see also Ball v. McGinley*, No. 3:12-CV-894, 2018 WL 3426236, at *1 n.1 (M.D. Pa. July 16, 2018) (substituting proper respondent in a habeas corpus case pursuant to Federal Rule of Civil Procedure 25(d)). Although Miami Correctional Facility is in the Northern District of Indiana, *see* 28 U.S. § 94(a)(2), this court retains jurisdiction over this case because petitioner was detained in this district at the time he filed his petition. *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 446 (3d Cir. 2021).

1

court conduct a second bond hearing. For the reasons that follow, the motion to enforce the judgment will be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

Petitioner, Ibrahim Nasr Ibrahim, is a native and citizen of Iraq who fled that country after serving as a translator for American troops stationed in the country. He subsequently entered the United States as a refugee after living in Egypt for several years. (Doc. 9-2, pp. 2–4.)[2] Ibrahim's status was adjusted to lawful permanent resident on November 9, 2011. (*Id.* at 2.) On December 9, 2014, Ibrahim was convicted of impersonation to deceive a law enforcement officer in Minnesota state court and sentenced to 45 days of imprisonment. (*Id.*) On April 3, 2017, he was convicted of misprision of felony in Minnesota and sentenced to 170 days of imprisonment. (*Id.*) On October 31, 2022, he was convicted of conspiracy to distribute a controlled substance in the United States District Court for the District of South Dakota and sentenced to 60 months of imprisonment. (*Id.* at 3.)

United States Immigration and Customs Enforcement ("ICE") initiated proceedings to remove Ibrahim from the United States on August 16, 2023, through issuance of a notice to appear ("NTA"). (*Id.*) On October 11, 2023, an immigration judge ("IJ") sustained the charges of removability against Ibrahim.

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

(*Id.*)  Ibrahim sought relief from removal to Iraq.  (*Id.*)  At a hearing on Ibrahim's motion, the IJ asked Ibrahim whether he would accept removal to Egypt rather than Iraq.  (*Id.* at 4.)  Ibrahim stated that he would, and the government stated that it did not object to removing him to Egypt.  (*Id.*)  The IJ accordingly ordered him removed to Egypt and did not list an alternative country in the event that Egypt did not accept Ibrahim.  (*Id.*)

On March 7, 2024, Ibrahim filed an administrative appeal to the Board of Immigration Appeals ("BIA").  (*Id.*)  The BIA dismissed his appeal, concluding that Ibrahim had waived his appeal rights before the IJ.  (*Id.*)  On May 20, 2024, Egypt advised the government that it would not accept Ibrahim due to his lack of Egyptian documents, ties, and citizenship.  (*Id.*)  Ibrahim filed a motion to reopen his appeal to the BIA, a motion to stay his removal, and a petition for review by the United States Court of Appeals for the Third Circuit.  (*Id.*)  The Third Circuit temporarily stayed Ibrahim's removal.  (*Id.*)  On July 11, 2024, the BIA denied Ibrahim's motion to reopen and motion to stay his removal.  (*Id.*)

On July 25, 2024, the Department of Homeland Security ("DHS") filed a motion to reopen Ibrahim's removal proceedings with the BIA, noting that the IJ's decision had addressed removal to Egypt but had not addressed the possibility of removal to Iraq.  (*Id.* at 4–5.)  The BIA denied the government's motion to reopen on September 9, 2024.  (*Id.* at 5.)  On November 6, 2024, the Third Circuit vacated

the temporary stay of Ibrahim's removal and denied his request for a stay of removal. (*Id.*) Ibrahim was then released from BOP custody, transferred to ICE custody, and housed at the Clinton County Correctional Facility on December 27, 2024. (*Id.*) On December 30, 2024, the government sought to reopen Ibrahim's immigration proceedings so that additional findings on removal to Iraq could be made. (*Id.*) The IJ denied the motion to reopen on April 3, 2025. (*Id.*)

Based on the denial of the motion to reopen, the government concluded that Ibrahim could lawfully be removed to Iraq on April 3, 2025. (*Id.* at 6.) The government requested travel documents to effectuate the removal to Iraq on April 9, 2025. (*Id.*) The government then conducted a post final-order custody review on the same day in which it determined that Ibrahim's detention would continue until he was removed to Iraq. (*Id.*)

On April 18, 2025, Ibrahim sought to reopen the removal proceedings so that he could contest his removal to Iraq. (*Id.*) He then filed the instant case on April 25, 2025, as an unrepresented petitioner, requesting that the court stay his removal and order him removed from ICE custody. (Doc. 1.) The case was initially assigned to United States District Judge Keli M. Neary. The IJ denied Ibrahim's motion to reopen his immigration proceedings on May 1, 2025. (Doc. 9-2, p. 6.) Iraq issued travel documents for Ibrahim's removal on the same date, and he was scheduled for removal on May 15, 2025. (*Id.*)

On May 6, 2025, Judge Neary dismissed the petition without prejudice for lack of subject matter jurisdiction to the extent it sought a writ of habeas corpus compelling DHS to remove Ibrahim to a country other than Iraq or otherwise challenged his removal order, but otherwise ordered the government to respond to the petition on the issue of whether Ibrahim should remain in detention pending his removal.  (Doc. 5.)  The government filed its response on May 27, 2025, and Ibrahim filed a reply brief on June 11, 2025.  (Doc. 11.)  Ibrahim then filed several documents in July and August of 2025, including an amended reply brief, a motion for summary judgment, a motion to expedite review of the petition, a letter to Judge Neary regarding the status of his detention and immigration proceedings, and a "motion to inform."  (Docs. 13–18.)  In these documents, Ibrahim informed the court that United States Citizenship and Immigration Services ("USCIS") had made an administrative finding that Ibrahim had established a reasonable possibility that he would be tortured if he was removed to Iraq.  (*See* Doc. 13-1.)

Based on this fact, the fact that Egypt had refused to accept Ibrahim, and Ibrahim's representation that he had contacted several other countries but that they had also refused to accept him, Judge Neary issued an order on September 24, 2025, finding that Ibrahim had established "good reason to believe that there is not a significant likelihood of removal in the reasonably foreseeable future" pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), and accordingly scheduled an

5

evidentiary hearing for November 6, 2025, to determine whether the government could respond with sufficient evidence to rebut that showing.  (Doc. 19.)  Counsel entered an appearance for Ibrahim on October 24, 2025.  (Doc. 21.)  Shortly thereafter, Judge Neary recused herself from the case and it was reassigned to the undersigned on October 27, 2025.  (Doc. 22.)

The court conducted the evidentiary hearing as scheduled on November 6, 2025.  (Doc. 26.)  Based on the evidence produced during the hearing, including evidence that Ibrahim and the government had both moved to reopen his immigration proceedings in light of USCIS's finding that Ibrahim had established a reasonable possibility that he would be tortured if he was removed to Iraq, the court issued an order at the conclusion of the hearing requiring the parties to file supplemental letter briefs.  (Doc. 27.)  The court directed the parties to address "the possible impact, if any, of the pending motion to reopen immigration proceedings on this case, including: whether this court is precluded from issuing a writ of habeas corpus while that motion is pending; whether this court is permitted to exercise discretion about whether to issue a writ of habeas corpus while that motion is pending; and whether the court should stay its ruling pending the decision of the motion."  (*Id.*)

After receiving the parties' supplemental filings, the court issued an order on December 1, 2025, finding that additional supplemental briefing was necessary,

noting that resolving the case required the court to consider the totality of the factual circumstances surrounding Ibrahim's detention and that too many of these circumstances had changed since the filing of the original petition to rely on the petition and original briefs.  (Doc. 31.)  The court noted three factual circumstances that were especially relevant: (1) the reopening of petitioner's removal proceedings; (2) the fact that Ibrahim was transferred from Pike County Correctional Facility to a facility in another district after the filing of this case; and (3) the fact that the government had determined that Ibrahim has a credible fear of removal to his native country. (*Id.* at 3.)  The parties filed additional supplemental briefs as directed.

After receiving the parties' supplemental materials, the court determined that Ibrahim's detention is now governed by 8 U.S.C. § 1226(c) because his immigration proceedings had been reopened and accordingly analyzed his habeas petition under the standards set forth in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020).  Based on that analysis, the court granted the petition on January 15, 2026, and ordered the government to conduct an individualized bond hearing at which the government would bear the burden to prove that petitioner is properly detained because he is a danger to the community or a flight risk. (Docs. 35–36.)  An IJ subsequently conducted a bond hearing in accordance with the court's order on February 3, 2026.  (Doc. 37, p. 2.)

Ibrahim filed the instant motion to enforce the judgment on February 24, 2026.  (Doc. 39.)  Ibrahim argues that the government did not meet its burden to show that he is a danger to the community because "the government offered nothing but old and stale convictions which petitioner took full accountability of and was completely rehabilitated."  (*Id.* at 2.)  Ibrahim acknowledges that the IJ considered his rebuttal evidence but that the IJ "opined that it did not outweigh[] the evidence[] submitted by DHS."  (*Id.*)  Ibrahim argues that the IJ should have granted him bond because, *inter alia*, he entered the United States legally, has a fixed address and owns property in the country, is married to a United States citizen and is the father of two other United States citizens, has been living in the United States for sixteen years, has complied with all court orders, has taken full responsibility for his past criminal conduct, and has maintained employment during his time in the United States. (*Id.* at 3.)  Petitioner filed a motion to expedite ruling on the motion to enforce judgment on April 6, 2026.  (Doc. 42.)  Respondent has not responded to either motion, and the motions are ripe for review.

### JURISDICTION AND STANDARD OF REVIEW

Federal district courts have the authority to enforce writs of habeas corpus and to conduct bond proceedings in habeas corpus cases brought by immigration detainees.  *Sylvain v. U.S. Att'y Gen.*, 714 F.3d 150, 155 (3d Cir. 2013); *Leslie v. Holder*, 865 F. Supp. 2d 627, 633 (M.D. Pa. 2012).  Courts within this District

have done so on many occasions after determining that the petitioner's hearing before an immigration judge was inadequate. *See, e.g.*, *Luciano-Jimenez v. Doll*, 543 F. Supp. 3d 69 (M.D. Pa. 2021) (granting motion to enforce writ of habeas corpus and ordering a bond hearing in federal court); *Walker v. Lowe*, No. 15-0887, 2016 WL 4077269 (M.D. Pa. Aug. 1, 2016) (granting petition for writ of habeas corpus and setting conditions for release following a bond hearing before the district court); *Leslie v. Holder*, 865 F. Supp. 2d 627, 633 (M.D. Pa. 2012) (ordering new bond hearing upon remand from the Third Circuit indicating such hearing was necessary).

### THE IMMIGRATION JUDGE'S BOND DETERMINATION

Following the bond hearing, the immigration judge issued a written opinion explaining his decision on February 5, 2026. (Doc. 39-5.) The IJ first considered Ibrahim's criminal history and found that it showed a "troubling repeated pattern of failing to oblige lawfully imposed obligations and the use of deception as a means to accomplish unlawful objectives." (*Id.* at 4.) After noting that the government bears the burden of proof and that a bond determination must be based on an individualized examination of the detainee's circumstances, the IJ concluded that the government had met its burden to show that Ibrahim was a danger to the community and a flight risk. (*Id.* at 7.)

9

Based on the circumstances of Ibrahim's criminal convictions, the IJ noted that he was "concerned not just by the number of prior convictions, but by their reliably consistent timing and escalation." (*Id.* at 8.)  The court concluded that Ibrahim's "criminal history clearly and convincingly evidences the likelihood of future danger he poses if released," and found that the bond could be denied solely based on that criminal history.  (*Id.* at 9.)

The IJ then considered the risk of flight "in addition to, or in the alternative" of its finding on danger to the community.  (*Id.*)  The IJ acknowledged that Ibrahim had provided evidence "which might dilute the Government's position that he is a flight risk," including his length of residence in the United States, his immigration and employment history, his family ties, and his community ties.  (*Id.*)  The IJ concluded that Ibrahim was a flight risk despite this evidence because there was evidence that his marriage may not be legally binding, the businesses he had previously run had gone out of business, and his previous convictions involving elements of impersonation and misprision "required an element of ignoring or concealing what were legally imposed obligations to report."  (*Id.* at 9–10.)

## DISCUSSION

When reviewing whether to grant bond to an immigration detainee, the detainee's risk of flight and danger to the community must be assessed "on a current basis."  *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999).  "The

fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category.  Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption." *Id.*  Although past criminal convictions may be considered, "[d]ue process is not satisfied . . . by rubberstamp denials based on temporally distant offenses."  *Id.*

In this case, the IJ's decision to deny bond to Ibrahim comports with due process and the court's prior grant of habeas corpus relief.  Although the IJ considered Ibrahim's previous criminal convictions, the ultimate decision to deny Ibrahim bond was not simply a "rubberstamp denial" based on the convictions: the IJ clearly explained his finding that the nature of the criminal convictions indicate that Ibrahim presently poses a risk of harm to the community.  (Doc. 39-5, pp. 4, 7–9.)  The IJ also correctly held the government to its burden of proof and required that the government establish its case by clear and convincing evidence.  (*Id.* at 6.)  Finally, the IJ's bond hearing was clearly an individualized determination based on Ibrahim's personal circumstances.  The IJ noted specific evidence from Ibrahim's life and circumstances to support his conclusion that Ibrahim poses a risk of harm to the community and a risk of flight, and clearly considered Ibrahim's contrary evidence in his analysis.  (*Id.* at 7–9.)  Based on the IJ's decision, the court concludes that no additional relief is necessary or warranted to enforce its grant of habeas corpus relief.

## CONCLUSION

For the foregoing reasons, Ibrahim's motion to enforce judgment (Doc. 39) will be denied and his motion to expedite a ruling on that motion (Doc. 42) will be denied as moot.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 14, 2026